973 So.2d 1280 (2008)
Eldrick R. ANDREWS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-4625.
District Court of Appeal of Florida, Fourth District.
February 20, 2008.
Nicole Cotton and Richard G. Lubin of Richard G. Lubin, P.A., West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Katherine Y. McIntire, Assistant Attorney General, West Palm Beach, for appellee.
HAZOURI, J.
Eldrick Andrews appeals from his convictions for burglary of an occupied structure and petit theft. We affirm the conviction for petit theft and reverse the conviction for burglary of an occupied structure, and remand for a new trial on that charge.
Prior to July 30, 2005, Andrews was an employee of a local beverage company, Diloreto and Sons, which provides vending and beverage services to businesses. As a part of the services provided by Diloreto and Sons, their employees bring vending machines into businesses, stock the machines, and then collect the money. Andrews was one of those employees. One of the routes which Andrews worked included Cheney Brothers, Inc. ("CBI"), which operates *1281 twenty-four hours a day providing food services to various restaurants throughout the state. In June of 2005, Andrews left the employ of Diloreto and Sons and was no longer authorized to service vending machines at the CBI location.
Although CBI is open twenty-four hours a day, the location of the vending machines in the break room is not open to the public. In order for any individual to gain access to CBI's property, he must clear a security gate manned twenty-four hours a day by a guard employed by CBI.
On the date in question, Andrews approached the security gate in a vehicle and was permitted access to CBI's property. A videotape of the admission of Andrews to the property records Andrews's entrance onto the property; however, there is no recording of any exchange between the security guard and Andrews as to what was said, and on what basis Andrews was admitted to the property. In the break room, where the vending machines were located, there was a security camera which recorded Andrews taking money from the vending machines. A witness called by the state identified Andrews in the videotape. The videotape also showed that Andrews was wearing a Diloreto and Sons uniform shirt.
Andrews asserts the trial court erred in admitting hearsay statements by the security director that Andrews was able to gain access to the property by wearing a uniform of his former employer. The security director learned this from speaking with a non-testifying security guard, who also informed the security director that he was tricked and/or deceived by Andrews at the front gate. We agree that the trial court erred.
Prior to the beginning of the trial Andrews filed a motion in limine asserting that:
2. Throughout the discovery process, it has come to the undersigned counsel's attention and anticipation, that counsel for the State and/or the State's witnesses will likely make statements or testify during the course of a trial which would infer [sic] that the Defendant gained access to the premises where the alleged offense took place by deceiving the personnel who granted him access to the premises.
3. To date, the State has produced no company personnel, nor any other witnesses for that matter, who ostensibly were deceived by the Defendant. It is also anticipated that no such witnesses will be called to testify during the course of a trial.
4. All of the witnesses produced by the State have indicated that they have no direct knowledge of what exchange(s) might have occurred between the Defendant and any personnel who were present when the offense allegedly took place and who granted the Defendant access to the premises.
5. If the counsel for the State or the State's witnesses are allowed to state to the jury that the Defendant deceived people in order to gain access to the premises, when in actuality no such person will be called to testify during the trial, such statements would constitute an unfair inference, would create great risk of confusion to the jury and create unfair prejudice against the Defendant. Such statements would also constitute improper commentary on facts not in evidence.
. . .
The trial court denied Andrews's motion in limine.
The state's first witness was Walter Wilcox, the security director for CBI. His job is to control the manpower needs of the security department and to maintain and service all camera and video recording devices. Wilcox reviewed the video of the employee break room for July 30, 2005. *1282 He observed an individual entering into the vending machines in the break room. The dates and times on the surveillance equipment are synchronized with the company's main frame computer system. There are seven recorders and they are checked periodically to make sure they are in sync with each other and with real time. A still photo printed from the videotape shows an individual at the vending machines. The person is shown in CBI's break room on July 30, 2005 at 3:47:54 A.M. CBI is not open to the public at that time. Only CBI employees, vendors, and people who are delivering products or servicing equipment are permitted there at that time. Vendors include employees of companies such as Diloreto and Sons, with which CBI has contracts.
On cross examination, Wilcox testified that he is the director of security. The gate is manned at all times. The signs at the gate include: (1) welcome, (2) vehicles are subject to search, (3) private property, (4) some inspirational signs, and (5) one directing trucks where to turn, Wilcox does not remember any signs that mention the hours of the different divisions of CBI.
Wilcox became aware of the theft only after he was notified days after it occurred. It was reported to him as a theft. When he learned of the theft, the extent of his investigation was to look at the video of the area where the vending machines are located.
Wilcox had no personal knowledge of why Andrews was permitted by the security guard to access CBI's property. The following exchange occurred during cross-examination:
Q: Well, let me ask you this. What I'm asking you is you don't know what transpired between the officers and the individual in the truck, correct?
A: What transpired, what are you referring to, sir?
Q: You don't know what exchange, verbal or otherwise would have occurred?
A: No, sir, I would not know what verbal exchange occurred.
Q: And at the time that you're testifying about, one method by which your security staff would allow people access onto the premises and into the building at Cheney Brothers is if they recognized them, correct?
A: If they had some familiarity with the person, yes, sir.
Q: So as you're here testifying today, you can't say whether or not your security personnel let Mr. Andrews in because they recognized him, correct?
A: I can testify that my security personnel let Mr. Andrews in because he was wearing a shirt that said Diloreto and Sons.
Q: Your Honor, I'd object, move to strike as hearsay.
(emphasis added). This is the very issue raised in the motion in limine which had been denied by the trial court. The trial court overruled Andrews's objection which was clearly based upon hearsay and was also unresponsive to the question posed by Andrews's counsel.
Under the facts of this case as tried, one of the essential elements of proving the crime of burglary requires the state to present evidence that Andrews did not have the permission or consent of CBI or anyone authorized to act on behalf of CBI to enter the, structure at the time in question.[1] The videotape of Andrews's admission *1283 to CBI's property by the security guard does not reflect what exchange took place between the security guard and Andrews that resulted in Andrews's admission to the property.
Proof of entering a structure by fraud or deceit may be considered to show that the entry was without the consent of the owner or occupant and may justify the finding that the act of entering was with the intent to commit a crime which would thereby constitute a burglary. The rationale for this is that consent to enter by fraud or deceit "is actually no consent at all and, therefore, the entrance is unauthorized." See Gordon v. State, 745 So.2d 1016, 1018 (Fla. 4th DCA 1999) (quoting Howard v. State, 400 So.2d 1329 (Fla. 4th DCA 1981)).
In his motion in limine, Andrews's counsel clearly outlined to the trial court his concern that there would be no direct testimony from the security guard as to any deception on the part of Andrews in gaining access to CBI's property. In denying Andrews's motion in limine and overruling the objection to Wilcox's testimony, the trial court permitted inadmissible hearsay to provide the missing link as to whether Andrews had used deception or fraud to gain admission to CBI's property.
The state does not contest that Wilcox's testimony about the deception by Andrews was not hearsay but asserts that the error was harmless. In order to show the error was harmless, the state has the burden "to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). The state argues that the jury heard evidence that Andrews, a former Diloreto and Sons driver, approached the guard gate at CBI, his former route, and after being allowed on the property, Andrews was observed on videotape wearing a Diloreto and Sons work shirt, entering the break room, and stealing the money from the vending machines. The state asserts that there is no reasonable possibility that the error affected the verdict. We disagree.
Although the evidence might suggest that Andrews was given consent to enter by pretending he was still a Diloreto and Sons employee, without direct testimony from the security guard there is a lack of direct evidence that deception or fraud was used to gain entrance to CBI's property. Andrews may have just been waved through by a security guard who recognized him from when he was an employee. The jury did not know if the guard saw his shirt. The jury also did not know what kind of vehicle Andrews was driving. Therefore, Wilcox's hearsay testimony was not harmless and could have contributed to the jury convicting Andrews of burglary. Because this error was not harmless, we reverse and remand for a new trial on the charge of burglary.
Affirmed in Part; Reversed in Part and Remanded.
KLEIN and DAMOORGIAN, JJ., concur.
NOTES
[1] Section 810.02(1)(b)1, Florida Statutes (2005) states:

Burglary.
(b) For offenses committed after July 1, 2001, "burglary" means:
1. Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter. . . .