OPINION OF THE COURT
Rena K. Uviller, J.
At the conclusion of the evidence at defendant’s trial for burglary and related crimes, he has moved to dismiss the burglary counts on the ground that there was legally insufficient evidence that he had entered or remained unlawfully in the complainant’s apartment. (CPL 290.10.) The motion raises two questions about the meaning of the phrase “enters or remains unlawfully”, contained in the criminal trespass and burglary provisions of the Penal Law. (Penal Law, §§ 140.05, 140.30, 140.00, subd 5.)
The first question, whether entry by trick or fraud constitutes unlawful entry, is not a novel one in our nisi prius courts. (People v Ludlowe, 117 Misc 2d 567; People v Segal, 78 Misc 2d 944.) In the absence of appellate authority, it merits further review, along with the related matter of how the jury should be instructed in such a case.
The second question is more troubling: What constitutes an unlawful remaining, as distinguished from unlawful *488 entry, upon private as opposed to public premises? Does the commission of a criminal act on private premises in and of itself convert a lawful entry into an unlawful remaining, sufficient to sustain a burglary charge?
The complainant testified at trial that the defendant, whom she had never seen before, knocked on her door in an apartment-dormitory building at Fordham University, inquiring for a student on the basketball team named “Leroy”. She admitted defendant into the apartment so that he could leave Leroy a note, provided him with pen and paper for that purpose, and allowed him to help himself to a glass of water. He left, but returned a few minutes later asking to use the bathroom, again was admitted, and left again. Defendant knocked a third time, requesting that the complainant retrieve the note for Leroy so that he could change a phone number and again was granted permission to use the bathroom. As complainant came out of her bedroom, where she had gone to get the note, defendant accosted her with a knife and threatened her. She ordered him to leave, warning him that her roommate would soon return. After a struggle, he stabbed her and fled.
Defendant’s version of the encounter was that he had met the complainant the day before on the street and was in her apartment as an invited guest; that he had never pretended to look for a Leroy. The People adduced other evidence that there was nobody named Leroy on the Ford-ham basketball team.
UNLAWFUL ENTRY
If defendant obtained entry through trick or artifice, he entered unlawfully. That the door was opened to him by the complainant on three separate occasions and that he was permitted to enter each time, cannot shield him from liability for burglary if that permission was secured by fraud.
The burglar who opens a door with a phony story instead of a screwdriver is a common enough phenomenon to have been explicitly addressed by the old Penal Law. Under that statute, the definition of burglary entailed breaking and entering, and the definition of breaking, in turn, expressly *489 included obtaining entrance by threat or artifice. (Former Penal Law, §§ 402, 400, subd 3.)
Under the revised Penal Law, there is no allusion to entry by deceit; a person commits a burglary when he enters or remains unlawfully in a building with the intent to commit a crime. (Penal Law, §§ 140.20-140.30.) Unlawful entry or remaining is, in turn, defined as an entry or remaining that is without license or privilege. (Penal Law, § 140.00, subd 5.) The failure of the revised law to mention expressly that entry by trick is not privileged or licensed has created some uncertainty; defendants charged with burglary or trespass have raised the defense of privilege or license, even though they may have gained ostensible privilege through subterfuge.
Lower courts have correctly rejected this defense despite the lack of explicit statutory or appellate authority. (People v Ludlowe, 117 Misc 2d 567, supra; People v Segal, 78 Misc 2d 994, supra.) The purpose of the burglary statute is to protect against the specific dangers posed by entry into secured premises of intruders bent on crime. The intruder who breaches the barrier with a lie or deception, by pretending to deliver a package or to read a meter, is no less dangerous than his more stealthy cohorts, and nothing in the statute suggests an intent to exempt him from liability.
Indeed, the original commentators on the revised statute, Justice Peter McQuillan and former Justice Richard Denzer, themselves participants in its drafting, state with certainty that entry by trick or misrepresentation is unlawful. (Denzer & McQuillan, Practice Commentary, McKinney’s Cons Laws of NY [1967 ed], Book 39, Penal Law, § 140.00, p 341.) Their interpretation is supported by the Penal Law’s invocation of tort principles and terminology, viz., “license” and “privilege”. (See People v Segal, 78 Misc 2d 944, 949, supra.) Under principles of tort liability, a license or privilege to enter premises is acquired by consent of the owner (Restatement, Torts 2d, § 330). But when that consent is obtained by misrepresentation or fraud, there is no license. (Restatement, Torts 2d, § 330, Comment g.)
Accordingly, when the evidence establishes that a defendant obtained permission to enter private premises by *490 trick, fraud, or deceit, then he has entered without privilege or license. In that event a jury should be instructed that the entry is unlawful. Thus, in this case the jury was properly permitted to consider whether or not the People had proved beyond a reasonable doubt that the defendant had obtained the complainant’s permission to enter her apartment by deception, and that if such deception was proved, the defendant’s entry was unlawful as a matter of law.
REMAINING UNLAWFULLY
The People contend that even if the jury should conclude that the defendant had entered lawfully as an invited guest, he remained unlawfully once he acted criminally. They argue that even if the jury finds the defendant gained permission to enter without deception, his license was revoked when he pulled a knife on the complainant, and that thereafter he remained unlawfully within the meaning of the statute.
Criminal liability for unlawfully remaining is designed to apply to situations in which a person enters with genuine license and privilege but remains after the termination of the license or privilege (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 140.00, p 16). The People reason that a privilege to remain is necessarily conditioned on lawful purpose and behavior, because nobody consents to criminal acts on his or her premises. Thus, once a person with license engages in criminal behavior, consent and hence license is revoked, and the person who entered lawfully thereafter remains unlawfully.
This reasoning impermissibly broadens the scope of liability for burglary, making a burglar of anyone who commits a crime on someone else’s premises. It erroneously merges two separate and independent elements that must coexist to establish burglary: first, the trespassory element of entry or remaining without license or privilege; second, intent to commit a crime. An intrusion without license or privilege (unlawful entry) is the distinguishing element, the essence of burglary. It must be established separately and distinctly from the intention to commit a crime. The mere fact that a crime was committed or was intended is an *491 insufficient basis for finding that the entry or remaining was without privilege or authority.
In the case of public buildings, the distinction between the two elements of absence of license on the one hand, and criminal intent on the other, is expressly stated in the Penal Law. License to enter or remain in public premises is conferred by statute rather than, as in the case of private premises, by the owner’s consent. (Penal Law, § 140.00, subd 5.) And that statutory license, the Penal Law makes clear, is not abrogated even though a person intends to commit a crime upon entering, or formulates such an intent once he is inside. Subdivision 5 of section 140.00 of the Penal Law thus expressly provides that in the case of premises open to the public, a person has license or privilege to enter or remain “regardless of his intent”. Accordingly, a person who shoplifts in a department store during business hours is guilty of larceny but not of burglary. His license to remain has not been abrogated, despite his criminal behavior.
The revised Penal Law rejects prior case law which suggested that an otherwise licensed or privileged entry could constitute burglary if an intent to commit a crime was proved. (See People v Sine, 277 App Div 908; Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 140.00, pp 14, 16.) Under the revised statute, a theft or other crime within public premises converts to burglary only after license to remain is revoked; and such revocation occurs only after the building is closed to the public or there is a direct and personal order to leave. The paradigm example of a lawful entry that converts to an unlawful remaining is when a person enters a store or office during business hours, and then secretes himself inside after the premises is closed to the public. (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 140.00, p 16; see, also, People v Powell, 58 NY2d 1009.)
In the case of private premises, where license or privilege to enter or remain is conferred by the owner’s consent, the distinction between the two elements of unlicensed entry or remaining and that of intent to commit a crime is not statutorily expressed. But the distinction is no less *492 clear. The two separate elements required to prove a burglary do not merge just because private premises are involved.
If this jury concludes that the defendant was in the complainant’s apartment with genuine license, that is, with her consent obtained without deceit, the fact that he was unwelcome after he pulled the knife does not convert his licensed entry into an unlawful remaining. His licensed presence there is not revoked by the commission of a criminal act.
The People’s reliance on People v Czerminski (94 AD2d 957) is misplaced. In Czerminski the Fourth Department upheld the burglary conviction of a police officer, who while investigating a crime in a warehouse, took the opportunity to steal some property. The court noted that Czerminski belonged to a special class including police officers and fire fighters, who are not true licensees by consent of the owner, but are privileged to enter private premises to perform their public functions. Thus, the court reasoned, while Czerminski entered lawfully in performance of his duties, his license or privilege terminated and he remained unlawfully when he acted outside the scope of these duties.
Czerminski is dubious authority for the proposition that any lawful entry into private premises is transformed into an unlawful remaining by criminal purpose or criminal act. The rationale of the case is premised on the unique nature of the privilege accorded public servants, a class deemed to be sui generis. Moreover, the two dissenters in Czerminski persuasively argue that the majority’s affirmance of the conviction improperly and unfairly expands the scope of the burglary statute, by allowing evidence of intent to convert a lawful entry into an unlawful remaining.
This is not to say that one who initially enters private premises with consent never remains unlawfully so as to incur liability for burglary. But there must be something more to establish termination of license than the commission of a criminal act or an order to leave after a criminal intention is manifested. Thus, in this case, if the jury were to conclude that the defendant was in the apartment with *493 the complainant’s true consent, her command that he leave after he displayed the knife would not constitute a revocation of license sufficient to convert a lawful entry into an unlawful remaining. To hold otherwise would broaden the scope and reach of the burglary statute beyond the Legislature’s intention.