807 So.2d 666 (2001)
Rolando OTERO, Appellant,
v.
STATE of Florida, Appellee.
No. 4D97-4348.
District Court of Appeal of Florida, Fourth District.
November 14, 2001.
Rehearing Denied February 28, 2002.
*667 Carey Haughwout, Public Defender, and Siobhan Helene Shea and Dea Abramschmitt, Assistant Public Defenders, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for appellee.
FARMER, J.
As to the only issue we discuss, the facts are these. Many years after the matter had ended, defendant arranged an appointment with the lawyer who had represented him in a civil rights claim.[1] The receptionist told the lawyer of his arrival. The lawyer appeared in the reception area and, after trying to ascertain why defendant had asked for the appointment, consented to have him into lawyer's private office.[2] As the two men seated themselves, they exchanged the customary pleasantries.
At that point defendant suddenly brought forth a gun, walked behind the lawyer and pointed the weapon at his lawyer's head. Raising the lawyer out of his chair with the gun at his chin, defendant handcuffed him. Then he excoriated the lawyer for his handling of the case. After striking the lawyer with the gun, he placed a "mini-tape recorder" in the lawyer's pocket and told him that it was a bomb timed to explode within minutes. He questioned the lawyer regarding the handling of witnesses in his case. Finally he demanded that the lawyer pay him some money. The two then went to the lawyer's bank, where the lawyer cashed a check and gave him several thousand dollars. Defendant released the lawyer upon his promise to pay more money soon. The police were called, charges were filed, and defendant was convicted of armed robbery, extortion, false imprisonment and burglary. We reverse the burglary conviction.
Defendant's motion for judgment of acquittal at the end of the state's case was arguably inadequate to preserve the legal sufficiency of the burglary charge. As another court has done, however, we distinguish cases in which ambiguous evidence is later said to fall short in proving a prima facie case on a particular element of the crime charged, where the neglect in raising the point clearly in a motion for judgment of acquittal will not be forgiven. Nelson v. State, 543 So.2d 1308, 1309 (Fla. 2d DCA 1989). But in the circumstance we confront in this case, the issue is whether the state's theory of culpability under the burglary statute was legally sustainable. If not, it would amount to fundamental error to permit a burglary conviction to stand, and hence the failure to preserve the issue may properly be excused on appeal. Griffin v. State, 705 So.2d 572, 573 (Fla. 4th DCA 1998). We therefore forgive the failure of preservation and proceed to explain our decision on the burglary charge.
Manifestly the evidence shows that defendant did not break in to the lawyer's *668 office, either by force or stealth. It is of course true that in gaining admission with the lawyer's consent, defendant apparently did not forewarn the lawyer of his resolve to terrorize, rob and extort money from him. Doubtless, the lawyer's readiness to have defendant into his interior office grew out of their prior relationship as lawyer and client.[3] Doubtless, too, from what ultimately happened after he was admitted, the outcome of their prior dealings was not exactly to the client's satisfaction. Nonetheless the evidence is decisive that the lawyer's admission of defendant into his private office was unforced, voluntary and real. Perhaps he hoped that relaxed conversation within, rather than unfriendly confrontation without, would gentle any uncongenial purpose in the client's return.
In 1997 when the event occurred, our statutes defined the crime of burglary as:
"entering or remaining in a...structure...with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain."
§ 810.02(1), Fla, Stat. (1997). If the charge of burglary lay in entering the reception area the evidence plainly fails, for that area is open to the public as business invitees. If on the other hand the burglary lay in entering the lawyer's private office, that was indisputably done with the lawyer's consent. If the charge lay in defendant "remaining in" the office, that was legally insufficient.
In Ray v. State, 522 So.2d 963 (Fla. 3rd DCA), review denied, 531 So.2d 168 (Fla. 1988), the court held that the victim's consent to enter and remain in a premises would be deemed to have been withdrawn when a visitor begins to commit a crime in the presence of the owner. In Delgado v. State, 776 So.2d 233 (Fla.2000), the court rejected this construction because "a number of crimes that would normally not qualify as felonies would suddenly be elevated to burglary." 776 So.2d at 239. The court said that its construction was necessary to "fulfill the purpose for which the crime of burglary was intended." 776 So.2d at 236. As the court explained: "[i]n the context of an occupied dwelling, burglary was not intended to cover the situation where an invited guest turns criminal or violent." 776 So.2d at 240. Therefore, the court held, the "remaining in" clause "should be limited to the defendant who surreptitiously remains." 776 So.2d at 240. Here the state's evidence shows that defendant's "remaining in" was not surreptitious.[4]
Delgado holds that if a defendant can establish that the premises were open to the public or that he was an invitee, he has shown a complete defense to the crime of burglary. 776 So.2d at 236. Delgado added that defendant usually bears the burden of establishing permission to enter the premises but recognized that evidence presented by the state may itself establish this affirmative defense. 776 So.2d at 240.
The lawyer voluntarily invited defendant into his inner office, and only after being *669 there in the owner's presence did he commit his crimes. Under Delgado defendant's "remaining in" the lawyer's office to commit the crimes was not burglary as defined in the former statute. We therefore reverse and remand with instructions to acquit defendant of the burglary charge. On all other issues, we affirm.
STEVENSON and GROSS, JJ., concur.
NOTES
[1] Actually the lawyer had to reschedule the first appointment to the day in question.
[2] "He said he wanted to go back into my regular office. We went back into my private office."
[3] As the lawyer explained during trial, he had suddenly been called to start a trial and did not want to waste time with defendant:

"He hadn't told me why he wanted to see me. I had a feeling it washe was mysterious on the phone why he wanted to see me. I had a feeling it had nothing to do with anything. I went out front to try to ascertain what it was about and hopefully I could just leave."
[4] In its most recent regular session the Legislature abrogated the Delgado construction of the burglary statute. See Ch.2001-58, Laws of Fla. By its express terms, the new provision applies only to crimes committed after July 1, 2001. See id., at § 2.