MAY, J.
The defendant appeals his conviction and sentence for grand theft of a motor vehicle and first degree grand theft. He makes three arguments. First, he argues the prosecutor committed fundamental error by denigrating him during closing argument for asserting his right to a jury trial. Second, he argues the evidence was insufficient to support the charge of grand theft of a motor vehicle and his counsel was ineffective in failing to move for a judgment of acquittal. Third, he argues the trial court violated his constitutional rights in sentencing him to thirty years’ imprisonment on the first degree grand theft charge and five years’ imprisonment on the grand theft of a motor vehicle *943 charge. We agree with him on the second issue and reverse the conviction and sentence on the grand theft of a motor vehicle charge. We affirm in all other respects.
The State charged the defendant with three counts of grand theft in varying degrees, which arose from the theft of one truck and two boats and their engines. Testimony at trial revealed that a deputy discovered two boats missing from the lot of an ocean engineering firm. The deputy reported the incident, and began to canvass the area because stolen boats were usually taken to a nearby remote area and stripped of their engines.
The deputy returned to the ocean engineering firm and found padlocks on the ground, which looked like they had been cut with bolt cutters. The surveillance cameras were covered with black latex gloves. He then noticed two pickup trucks pull out of a neighborhood across the street; one was maroon and the other gray. This seemed suspicious because the neighborhood was under development.
The deputy pulled behind the maroon truck and identified the license plate; the defendant owned the truck. Because the deputy could not stop both trucks at the same time, he tried to identify the license plate on the gray truck. As he tried to pass the maroon truck to view the license plate number of the gray truck, the maroon truck blocked him from switching lanes.
The deputy turned on his “takedown” floodlights and flashed them into the back of the maroon truck, where he saw a Yamaha outboard engine cover for a boat engine. Oil also flew up onto the windshield of the deputy’s car from the truck. The gray truck turned. The deputy reported the gray truck to his sergeant, and continued to follow the maroon truck.
The deputy initiated a traffic stop of the maroon truck after it ran a stop sign. As he approached the driver’s side of the truck, he saw oil dripping out of the bed of the truck onto the bumper, which was covered in oil. He saw a boat engine in the back of the truck, smelled a strong odor of gas coming from it, and saw oil and gas dripping from the lines of the engine as if it had just been sliced or cut away from a boat. Bolt cutters, a box of black gloves consistent with those found on the surveillance cameras, a blow torch, and a stolen boat engine were found in the defendant’s truck.
After receiving a call about the gray truck, a sergeant observed a truck matching the description. When he attempted to stop the truck, the driver would not pull over. The truck turned into the same undeveloped neighborhood the deputy had seen it leave from earlier. The truck crashed through the entrance gate and came to rest at a tree. The driver and passenger exited the truck while it was still moving. The sergeant apprehended the passenger; the driver fled the scene.
. The sergeant noticed the ignition of the gray truck had been “punched.” Upon further investigation, law enforcement discovered the truck had been stolen earlier in the evening. The sergeant located the two. stolen boats sitting on their trailers inside the undeveloped neighborhood. Two marine engines were found in the back of the gray truck along with numerous tools, including screwdrivers and wrenches. In total, three engines from the two stolen boats were recovered from the two trucks.
The three stolen engines were purchased in May 2012 for $77,729. Without the engines, one stolen boat was worth $50,000 and the other was worth $30,000. The boat trailers were purchased in April 2012 for $5,400 and $7,000. It cost $4,000 *944 to reconnect the stolen engines to their boats, and $8,943 to repair the stolen gray truck.
After the State rested, defense counsel moved for judgment of acquittal, but only on the charge for first degree grand theft of property, not on the charge for theft of the gray truck. The court denied the motion. The defense did not present any ■witnesses.
The jury found the defendant guilty of grand theft of a motor vehicle and first degree grand theft. The State nolle prossed the second degree grand theft charge. The court adjudicated the defendant guilty and sentenced him to five years’ imprisonment on the grand theft'of the motor vehicle charge and thirty years’ imprisonment on the first degree grand theft charge, with the sentences to run consecutively.[1]
On appeal, the defendant argues his. conviction for grand theft of a motor vehicle should be reversed because there was no evidence that he knew the gray truck was stolen or that he had any involvement in its theft. He asserts that although defense counsel did not move for judgment of acquittal, his conviction on that charge was fundamental error because of the insufficiency of the evidence. In the alternative, he asserts trial counsel was ineffective for failing to move for judgment of acquittal.
The State responds that the defendant failed to preserve the issue for appellate review. It argues that had the issue been preserved, the defendant’s argument is still without merit because the evidence established that the defendant knew the gray truck was stolen as he tried to prevent the deputy from viewing the license plate on the gray truck, and the ignition had been punched. Responding to the ineffective assistance of counsel argument, the State argues the claim is not cognizable on direct appeal as the defendant failed to file a Rule 3.850 motion.
We have de novo review of the denial of a motion for judgment of acquittal. Ortiz v. State, 36 So.3d 901, 902 (Fla. 4th DCA 2010) (citing Pagan v. State, 830 So.2d 792, 803 (Fla.2002)). Where defense counsel fails to move for a judgment of acquittal, we review the issue for fundamental error. Otero v. State, 807 So.2d 666, 667 (Fla. 4th DCA 2001); see Andre v. State, 13 So.3d 103, 105 (Fla. 4th DCA 2009).
The defendant was convicted as a principal for the crime of grand theft of a motor vehicle. § 812.014, Fla. Stat. (2014).
To convict under a principals theory, the State is required to prove that “the defendant had a conscious intent that the criminal act be done and ... the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist, or advise the other person or persons to actually commit or attempt to commit the crime.”
Hall v. State, 100 So.3d 288, 289 (Fla. 4th DCA 2012) (omission in original) (quoting Smith v. State, 76 So.3d 1056, 1058 n. 3 (Fla. 4th DCA 2011)). The essential elements of grand theft of a motor vehicle are the following:
(1) [T]he knowing and unlawful obtaining or use, or the knowing and unlawful endeavor to obtain or use, (2) the motor *945 vehicle of another, (3) with intent to either temporarily or. permanently (a) deprive the owner or- lawful possessor of the motor vehicle of a right to the vehicle or a benefit from it, or (b) appropriate the motor vehicle to the accused’s own use or to the use of any person not entitled to it.
Jones v. State, 666 So.2d 960, 964 (Fla. 3d DCA 1996). Here, the State failed to prove the defendant: (1) knew the gray truck was stolen, and (2) committed an act to assist the co-defendant in the theft of the gray truck.
The only evidence presented by the State on the grand'theft of a motor vehicle charge came from the deputy who first discovered the boat theft. He testified that he first pulled behind the maroon truck driven by the defendant. When he tried to pass the maroon truck to get the license plate number on the gray truck, the defendant positioned his truck to prevent the deputy from passing him. The State argued that this conduct showed the defendant knew the gray truck had been stolen. That coupled with the punched ignition in the gray truck was sufficient evidence to warrant the denial of a motion for judgment of acquittal. We disagree.
The deputy’s testimony at best raised only a scintilla of suspicion of the defendant’s guilty knowledge, insufficient to withstand a motion for judgment of acquittal, had one been made. See, e.g., A.D. v. State, 106 So.3d 67, 69 (Fla. 2d DCA 2013) (reversing grand theft auto conviction where state failed to present evidence that juvenile knew his friend intended on stealing the van and only entered the stolen van after it was stolen); Canady v. State, 813 So.2d 161, 161 (Fla. 2d DCA 2002) (reversing conviction because defendant was. merely a passenger in a vehicle that he knew was stolen).
In short, the State failed to present evidence that the defendant knew that the gray truck was stolen or that he assisted the co-defendant in stealing the truck. As a matter of law, the evidence did not support a conviction for grand theft of a motor vehicle, even under the principal theory. See Hall, 100 So.3d at 289; The State’s evidence was plainly insufficient and thus it was fundamental error for the defendant to be convicted of grand theft of a motor vehicle. Andre, 13 So.3d at 105 (“[A] conviction imposed upon a crime totally unsupported by evidence constitutes fundamental error.”).[2]
The defendant makes six arguments as to why his thirty-year sentence on the first degree grand theft charge should be reversed. He argues the sentence is arbitrary and violates his due process rights, violates the Cruel and' Unusual Punishment Clause, and is disproportionate to that of his co-defendant’s sentence in violation of the Equal Protection Clause. He also argues that the trial court’s finding that the crime was committed with great sophistication is unsupported by the evidence; and the court failed to consider the cost to the public in imposing the maximum sentence, which should be reserved for the most serious offenses committed by persons with significant prior records. Because the sentence falls within statutory limits, we must affirm. Howard v. State, 820 So.2d 337, 339 (Fla. 4th DCA 2002) (citing Booker v. State, 514 So.2d 1079, 1081 (Fla.1987)).
Judge Gross addresses these arguments in greater detail in his special concurrence. I concur in many of his observations. I *946 strongly support the discretion given to judges in imposing sentences because there are so many variables in every case. Yet, we do 'see sentences that beg for justification that the record does not provide.
We reverse the conviction on the grand theft of a motor vehicle charge and remand the case to the trial court to vacate the conviction and its corresponding five-year prison sentence. Because of the significance of the issue raised by the special concurrence, we certify the following question to the Supreme Court of Florida as being of great public importance:
Does a sentence within the statutory maximum under the Criminal Punishment Code violate either the Due Process Clause or Eighth Amendment when it is significantly greater than the lowest permissible sentence on the defendant’s scoresheet or the offered plea and grossly disproportionate to the median sentence imposed for similar crimes within the jurisdiction?[3]

Affirmed in part; Reversed in part and Remanded.

GROSS, J., concurs specially with opinion.
CONNER, J., concurs in part and dissents in part with opinion.

. The defendant twice moved to correct sentencing errors under Florida Rule of Criminal Procedure 3.800(b)(2) arguing that sentencing under the Criminal Punishment Code ("CPC”) violates the Due Process Clause, the CPC violates the Cruel and Unusual Punishment Clause, and his sentence violated the Equal Protection Clause because his co-defendant was sentenced, to only fifteen years’ imprisonment. The trial court did not rule on those motions.

. Because the defendant's conviction as a principal for grand theft of a motor vehicle must be reversed for insufficiency of the evidence, the defendant's claim for ineffective assistance of counsel need not be addressed.

. The Florida Constitution requires conformity with the federal interpretation of the Eighth Amendment. Article I, Section 17 of the Florida Constitution requires that,
[t]he prohibition against cruel or unusual punishment, and the prohibition against cruel and unusual punishment, shall be construed in conformity with decisions of the United States Supreme Court which interpret the prohibition against cruel and unusual punishment provided in the Eighth Amendment to the United States Constitution.
Art. I, § 17, Fla. Const.